## The National Bank of Chambersburg v. Nitterhouse

*Daniel W. Long*, for plaintiff.

*John A. Smarsh*, for defendants.

DEPUY, P. J., August 4, 1958.—Plaintiff, hereinafter referred to as the bank, filed its complaint in an

action of mortgage foreclosure embracing a hotel and a residence property on December 4, 1957, and personal service was made upon defendant executrix and upon William H. Stead, a tenant of the dwelling. No answer was filed and plaintiff obtained judgment of $43,695.16 against Margaret E. Nitterhouse as executrix and also as legatee. On April 7, 1958, plaintiff caused a writ of levari facias to issue and the sheriff of Franklin County advertised the two tracts of land for public sale on May 9, 1958. At the sale the dwelling house was sold to Maude Allen for $11,050 and the Lincoln Hotel to Benjamin Isenberger, acting on behalf of the National Bank of Chambersburg, for the sum of $20,000.

On May 16, 1958, before the writ had been returned by the sheriff, defendant filed her petition to set aside the sheriff's sale.

The essential averments of the petition are:

A. That the sheriff's advertisement in the newspapers and handbills was insufficient in that the text of the advertisement did not describe the writ on which the tracts were to be sold, nor did it state at whose suit the tracts were being sold.

B. That the sale was irregular and fraudulent for the reason that the officers and directors of plaintiff corporation told various interested persons not to bid on the property, and that thereby the properties were sold at a great sacrifice, to the prejudice of petitioner and of the creditors of the estate of William H. Nitterhouse.

C. That the sheriff sold the property on May 9, 1958, when it should have been sold on August 8, 1958, the second Monday of August.

The issuance of the rule was waived and the bank filed its answer averring in substance that the properties were correctly advertised by the sheriff, that the sale was in all respects regular and proper, that

nothing had been done by the bank to discourage bidding or to bring anything other than the best price for the property and that the sale was held on the proper day according to the Act of March 18, 1875, P. L. 28, as amended by the Act of April 27, 1927, P. L. 420, 17 PS §881, and the Franklin County Rules of Court. The answer filed by Maude Allen, purchaser of the residence property, was in substantially the same terms as the answer of the bank, with the addition that in some respects the answer pleaded ignorance and demanded proof. The sheriff also filed an answer averring the regularity of his proceedings.

A hearing was held and evidence taken upon the petition and answers on May 25, 1958.

In petitioner's first contention he relies upon the Act of July 22, 1919, P. L. 1089, 45 PS §81, where the following is stated:

"The notice required to be given by the sheriffs of the several counties of this Commonwealth of all judicial sales of real estate under any writ, process, order, or decree of court, shall be by printed handbills, briefly describing the improvements if any, the writ, process, order, or decree of court on which said sale is being had, together with the name or names of the owners or reputed owners of the land to be sold, the time when, and the place where."

Though the sheriff might properly in his handbills and newspaper advertisements have set forth at greater length a "description" of the writ under which the real estate was to be sold, we are not prepared to hold on the present facts that the language of the advertisement was so defective as to invalidate the sale. The advertisement stated "by virtue of certain writs issued out of the Court of Common Pleas of Franklin County, Pennsylvania, and to me directed, I will sell at public venue or outcry in front of the Court House . . . the following described tracts of real

estate . . .". With this information it was open to any interested person to consult the records of the Court of Common Pleas of Franklin County in order to obtain any further information desired as to the nature of the writ or otherwise. At all events there is no showing by petitioner that he suffered in any respect because of the asserted shortage of information in the advertisement concerning the writ.

Petitioner now contends further that this court has not passed a rule required by section 1 of the Act of 1919, above quoted, which further states: "Such number of said handbills shall be posted as shall be designated by special or standing rule or order of court of the county out of which the writ . . . issued . . .". The petition and the evidence thereunder contain nothing in support of petitioner's present argument. There being a presumption of regularity of a sheriff's sale, it must be assumed that the proper number of handbills was posted. If and when the court is called upon to confirm the sale, the order of confirmation may effectively relate back as amounting to a special order regarding handbills: Best v. Blue Ridge Water Supply Company, 7 D. & C. 549, 552, 553; Barnes v. Barnes, 14 D. & C. 563.

A sheriff's sale will not lightly be set aside for inconsequential irregularities. In American State Bank and Trust Company, for use, v. Mariades, 328 Pa. 428, 430, the rule is stated:

"On an application to set aside a sheriff's sale the court below has a broad discretionary power, reversible only for manifest abuse: *Hettler v. Shephard*, 326 Pa. 165; *Senge v. Border*, 319 Pa. 481."

In the case of minor deviations from rule or statute, where there has been no showing of resultant harm to petitioner, the courts have declined to set aside a sheriff's sale. See Somervill v. Hill, 260 Pa. 477;

Donley v. Semans, 260 Pa. 88; Derr v. New York Joint Stock Land Bank, 335 Pa. 309.

Petitioner's second allegation deals with the allegedly fraudulent manner in which plaintiff had conducted the public sale of the real estate and avers the following:

"That the said sale was so irregular and fraudulent due to the conduct of certain officers and directors of the National Bank of Chambersburg, the plaintiff, as to produce a great sacrifice of the properties to the prejudice of your petitioner and defrauding the creditors of the estate of William H. Nitterhouse.

"That the officers and directors of the plaintiff corporation told various persons not to bid on the property although they were interested in the purchase of the hotel."

In support of these allegations petitioner called to the witness stand Paul Walker, president of plaintiff bank, as of cross-examination. Two legal problems resulted.

Plaintiff's counsel demanded an offer of proof. This was granted by the court over petitioner's objection. It is true that where, as here, a case is not tried before a jury, there is less reason than otherwise for permitting one party to require another to state in anticipation what is intended to be proved by a witness offered. Petitioner, in opposing the request for an offer, relied upon this argument and also contended that it is not proper to require an offer of proof in case of cross-examination, because:

"The value of a cross-examination, as a test of truth, would be lost in the case of a crafty and unreliable witness, if the examiner were bound to disclose, in advance, the purpose and intent of every question asked": Martin v. Elden, 32 Ohio 282, 289.

We consider this to be the rule and therefore would not view favorably a request for an offer of proof in

case of ordinary cross-examination. In the present instance, however, we have a special situation where a moving party is undertaking to prove his case in the first instance by calling the chief officer of an opposing party corporation as of cross-examination, in which event there is not present the normal limitation upon the scope of cross-examination fixed by the framework of the direct examination. The moving party, without any limitations other than those of relevancy, is undertaking to present a new witness. Though we do not necessarily in this instance and in this type of situation consider that a request for an offer of proof should be granted mechanically, we think the matter is within the sound discretion of the court and that there may be greater reason here for the granting of such an application than in the case of routine cross-examination.

It is not unreasonable for counsel for the party called as on cross-examination to ask for a preliminary indication by opposing counsel as to the direction which the interrogation will take. It may be noted that in the present instance the court heard the offer of proof and argument upon it at side bar, out of the hearing of the witness. We consider the court committed no error in granting plaintiff's application for an offer of proof. The rules as to relevancy of evidence in relation to cross-examination are set forth in Brown, Evidence, page 294, and in Henry, Pennsylvania Evidence, vol. 2, sec. 727, but these references are not particularly helpful in the present special situation of a party or principal officer called by opposing counsel *as of cross-examination.*

The manner of receiving testimony is, to considerable degree, in the discretion of the court and this extends to cross-examination: Kaplan v. Loev, 327 Pa. 465; Murdoch v. Biery, 269 Pa. 577; Drexler v. Borough of Braddock, 238 Pa. 376.

We have not, nor have counsel in their briefs, located any law upon this particular subject.

We now examine petitioner's contention that the court erred in sustaining plaintiff's objection to the testimony offered by this witness. The proferred evidence was rejected for the reason that the text of the offer was not self-sustaining. The offer as stated set forth an intention to prove by the witness that he had a conversation with a prospective purchaser, unnamed, at a time and place unspecified, that the witness with other officers of the bank offered to sell the real estate at a lesser sum (lesser than what figure?), to a person not named, at a time and place not stated, that "they", unnamed, offered the sum of $45,000 for the hotel, that Stouffer and Baumgartner of the bank told counsel that this "was the price", at a time and place not stated and with no statement in the offer as to what relation, if any, this conversation had to the witness, Paul Walker. Upon inquiry by the court counsel for petitioner then stated that the whole conversation, not specifying which one, occurred prior to entry of this suit, still not mentioning any particular time, generally or specifically. Counsel extended the offer to include testimony by "another man", unnamed, who allegedly stated that Mr. Stouffer would give him first chance to purchase the hotel at $50,000, not mentioning time or place. Upon interrogation by the court, counsel further amplified the offer of proof in terms not materially more specific than theretofore.

In our view the court properly sustained plaintiff's objection to the proposed testimony of the witness on the basis of lack of detail and specificity of such a character as to show that the proposed testimony was relevant and probative of the issues before the court.

No part of the testimony set forth in the offer indicated that any bidder, as alleged in the petition, had been, by action of the bank or its officers, discouraged

or prevented from bidding at the sheriff's sale. As stated in Cary v. Tychonicavice, 51 York 98, 99: "The law presumes that a public judicial sale is made in good faith. This presumption stands unless overthrown by clear and satisfactory evidence of fraud or unfair means."

The third infirmity alleged by petitioner in the manner of holding the sheriff sale is that the sale was held on an incorrect day, namely May 9, 1958, when it should have been held on August 8, 1958, in accordance with the Act of February 16, 1867, P. L. 27. The latter statute provides at section 1:

"That after the first day of March next, the terms of the several courts in the county of Fulton shall commence on the first Monday of April, the first Monday of August, the third Monday of October, and the second Monday of January; in the county of Franklin, on the second Monday of April, the second Monday of August, the fourth Monday of October, and the third Monday of January, and to continue two weeks; in the county of Bedford, on the fourth Monday of April, the first Monday of September, the third Monday of November, and the second Monday of February; and in the county of Somerset, on the first Monday of May, the second Monday of September, the fourth Monday of November, and the third Monday of February, and to continue two weeks, in said county of Somerset, whenever so ordered by the court; and all laws, or parts of laws, inconsistent herewith, are hereby repealed.".

Rule 133 of the Rules of the Court of Common Pleas of Franklin County, inter alia, provides that:

"Regular terms of the Court of Common Pleas, Court of Quarter Sessions of the Peace, Court of Oyer and Terminer and General Jail Delivery, and Equity Court, shall be held each year commencing the second Monday of February, May, September, and November, the

terms to be known respectively by the name of the month in which each commences."

Rule 134 of the present Rules of the Court of Common Pleas of Franklin County provides the following:

"All writs of execution and final process shall be returnable on the first day of each regular term."

The recited Act of 1867 is one of a number of special acts applicable to Franklin County and in some instances, other counties, passed from time to time by the legislature in an earlier period of our history.

Petitioner contends that even though the legislature may, at times, have passed one or more general statutes on particular subjects undertaking to repeal all inconsistent local acts, such a statute is in effect a local rule, as to the local statute it undertakes to repeal, and hence ineffective for its intended purpose by reason of article III, sec. 8, of the Pennsylvania Constitution which reads:

"No local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or the thing to be affected may be situated, which notice shall be at least thirty days prior to the introduction into the General Assembly of such bill and in the manner to be provided by law; the evidence of such notice having been published, shall be exhibited in the General Assembly, before such act shall be passed."

In derogation of the Act of 1867, fixing the terms of court in Franklin County, relied upon by petitioner, is the Act of March 18, 1875, P. L. 28, as amended by the Act of April 27, 1927, P. L. 420, 17 PS §881, as follows:

"The judges of the several courts throughout the Commonwealth shall be authorized at any time hereafter to make an order fixing the number of the regular terms of the said several courts, establishing the times for holding the same, and fixing the times for jury

trials in said courts, as in the opinion of the said judges, the business may require."

This statute provides that all acts and parts of acts, general, local and special, inconsistent therewith, are repealed. Petitioner's contention apparently is that a statute intended to repeal a local act must itself be a local act and must be advertised and proceeded with according to the form specified in the above quoted section of the Constitution. If true, this argument would nullify a great number of modern statutes on numerous subjects containing general repealers and would restore to plenary vigor a large number of local acts which, in the contemplation of most attorneys and courts of the Commonwealth, have passed into the limbo of an earlier era.

Though we do not deny there is some logic in the view advanced by petitioner as to the import of the constitutional provision, we are not prepared to consider as upset all the legislation which has taken place in the modern period, nor all the decisions which the courts have pronounced in reliance upon such legislation. We consider that the repealer sections of these statutes constitute general, not local, legislation and that these achieved their intended result, namely the repeal of the pertinent earlier local statutes in each instance. This view has been adopted by our courts: Commonwealth v. Ramsey, 42 Pa. Superior Ct. 25; Commonwealth v. Parry, 45 Pa. C. C. 390.

Our conclusion is that petitioner has not succeeded in supporting her allegations averring infirmities in the sheriff's sale and therefore the petition to set aside the sale must be dismissed.

Now, August 4, 1958, the petition of Margaret E. Nitterhouse, executrix under the will of William H. Nitterhouse, deceased, also known as W. H. Nitterhouse, and as an individual legatee, to set aside the sheriff's sale in the above-entitled proceeding is dismissed, at the cost of the petitioner.